Glenn A. Davison, Plaintiff-Appellant, v. Milo Homola and Jarmila Homola d/b/a Shamrock Beauty Shop, Defendants, Continental Casualty Company, Garnishee-Defendant-Appellee.

Gen. No. 49,422.

First District, First Division.

May 4, 1964.

Nathan Shefner, of Chicago, for appellant.

Hauseman and Hoolehan, of Chicago (Jack C. Krause, of counsel), for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

This is a garnishment proceeding, in which plaintiff appeals from an order discharging the garnishee-defendant, Continental Casualty Company.

Plaintiff, Glenn A. Davison, was awarded a $3500 judgment against defendants, Milo Homola and Jarmila Homola, d/b/a Shamrock Beauty Shop, for injuries received by him on December 21, 1960, while he was getting a haircut in a barber shop operated by the defendants. Plaintiff then instituted the instant garnishment proceedings against Continental, defendants' insurer.

Continental filed a jury demand and answered negatively to the interrogatories contained in the affidavit for garnishment. At the conclusion of the presentation of evidence before a jury, both plaintiff and the garnishee-defendant presented motions for a directed verdict, which the trial court held to be a submission of the issues to the court for determination. After argument by counsel and consideration by the court of the evidence previously submitted to both the court and the jury, the court held that the policy issued by Continental to defendants Homola covered only the operation of defendants' beauty shop and not defendants' barber shop, in which plaintiff was injured. An order was entered, discharging the garnishee-defendant. It is from this order that plaintiff appeals.

■ As a general rule, a judgment creditor is in no better position in a suit of this character than the insured, and any defense which the insurer may assert against the insured may be asserted as a defense against the injured party. (Meyer v. Aetna Cas. Ins. Co., 46 Ill App2d 184, 190, 196 NE2d 707 (1964).) Therefore, the determinative question here is the meaning of the language contained in the policy issued by the garnishee-defendant to defendants. The trial

471

court proceeded on the theory that the policy was ambiguous, and it was necessary to look to the construction which the parties had placed on the contract, and he concluded that "the parties have construed this to be the operation of the beauty parlor [only]."

The location in issue, The Shamrock Beauty Shop at 829–831 West 55th Street, LaGrange, is referred to by attorney for defendant as a "combination beauty parlor and barber shop." The record shows that the auditor for the defendant testified that "as far as tax-wise, it is 1 operation," that is, one Federal income tax return is made for the entire business. The defendant Milo Homola testified that "in a professional view" the barber shop and the beauty shop are two different operations. Photographs are in evidence which show "Barber Shop" on the door at "829" and "Beauty Shop" at "831." Also, in front of "829" is the customary barber pole, and an electric sign in the window, "5 Barbers." It was also brought out during the trial that in the back of the two shops there was a common room joining both shops.

The policy, in evidence, is a printed standard form "Beauty Shop Malpractice Liability Policy," issued for the period of one year from December 18, 1959, and subsequently renewed for a like period. Under the heading of Declarations, Item 1, the named insured are "Milo Homola and Jarmila Homola d/b as Shamrock Beauty Shop, Address 829–831—55th Street, LaGrange, Illinois." Item 4 is: "The operations covered by this policy are, except as excluded by and subject to all other provisions of the policy, beauty parlor operations, including manicuring, chiropody, hair cutting, hair dressing, hair dyeing and waving, permanent waving, facial massage, needle electrolysis and other operations incidental thereto." Item 5 shows "Location of Premises Covered Hereunder . . . Shamrock Beauty

Shop, 829–831—55th St., LaGrange, Illinois. . . . Minimum Premium per location $72.50 . . . Advance [Estimated] Premium $145.00." Item 6(b) states: "the insured is conducting no other business operation other than a beauty or barber shop at this or any other location . . . ." Under the "Insuring Agreements" provisions, paragraph 1(a), Continental undertakes "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages . . . arising out of (a) any personal or professional service rendered, or the use of any preparation or appliance, on or away from the premises in connection with the operation of a Beauty Parlor or Barber Shop by the named insured at the premises."

The premium for the policy was to be "calculated at the rates specified in the declarations and upon the entire remuneration of every character earned during the policy period by all officials and employees of the insured engaged in any capacity in connection with the work described in the declarations including individual insureds and members of a copartnership. . . . If, at the end of the policy period, such entire remuneration exceeds said estimate, the insured shall immediately pay to the company the corresponding additional premium."

On December 28, 1960, a "Payroll Report" of "Milo & Jarmila Homola, Shamrock Beauty Shop," showed the total remuneration "earned by all full and part-time employees from 12/18/59 to 12/18/60" was $8,-379.48. This was the gross pay of the beauticians in the beauty shop, and the "Payroll Report" did not include barber shop wages of $22,000. The testimony of defendant's bookkeeper as to the payroll report is that it covers only the beauty shop, although he pointed out, "They are all in 1 book [meaning all of relevant bookkeeping material] . . . . In this case, I was requested to do only the pay roll for the beauty shop."

473

On March 1, 1961, an additional premium of $34.50 was paid for the reported period of December 18, 1959, to December 18, 1960.

In evidence, also, is a letter from Continental to defendants of July 7, 1961, in which barber shop coverage is disclaimed because "the barber shop operations are not covered under the Beauty Parlor policy." Again, in a letter of September 26, 1961, Continental refused barber shop coverage because "our records indicate no premium was paid for the barber shop operation and as the result we are unable to accept any coverage for accidents arising out of or in the course of the barber shop operation."

█ Initially, we find no merit in plaintiff's contention that the court erred in admitting into evidence defendants' exhibits 1, 7 and 8. Plaintiff maintains the evidence was immaterial and irrelevant to the construction of what he considered to be a "plain, concise and unambiguous" policy. Exhibit 1 was the Homola "Payroll Report" for the period from December 18, 1959, to December 18, 1960. Exhibits 7 and 8 were summaries of the wages paid to the employees for the barber shop and beauty shop for the years 1959 and 1960. These exhibits were admitted as evidence of the construction placed upon the policy by Continental and defendants Homola, since the insurance policy was a remunerative type and the premiums depended upon the payroll of the operation covered. Therefore, the "Payroll Report," completed by defendants Homola on a blank form supplied by Continental, which covered only the salaries of the beauty shop employees, clearly showed that defendants Homola construed the policy to cover only the beauty shop operations, and this was joined in by Continental. This was the interpretation arrived at by the trial court after an extended consideration of the evidence and the arguments of counsel. We believe this finding to be correct and fully supported by the record.

In the alternative, we have considered plaintiff's contention that the policy was unambiguous, and that no question of construction arose. Cases cited include Illinois State Toll Highway Commission ex rel. Patten Tractor & Equipment Co. v. M. J. Boyle & Co., 38 Ill App2d 38, 51, 186 NE2d 390 (1962):

> "A contract must be interpreted so as to give effect to the intention of the parties at the time the contract was made, as far as that may be done without contravention of legal principles. . . . 'The intention of the parties to a contract must be determined from the language employed in the contract, and, where there is no ambiguity, from such language alone . . . . As frequently said, where there is no ambiguity in the terms of the written contract the instrument itself affords the only criterion of the intention of the parties.' . . . It is not the duty of the court to make a new or different contract for the parties, and the words in the contract must be given their ordinary, natural and commonly accepted meaning."

Also cited is Carpenter v. Continental Casualty Co., 95 F2d 634, 639 (1938):

> "The intention of the parties is not to be deduced from fragmentary parts. It is not permissible to divide this contract into separate parts for the purpose of creating ambiguity which does not exist when the contract is read and considered as a whole. . . . Where an insurance policy is reasonably susceptible of two constructions, that construction should ordinarily be adopted which is more favorable to the insured. But the rule is equally well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and, if they are unambiguous,

the terms are to be taken in their plain, ordinary and popular sense , . . ."

■ Applying the principles cited above to the foregoing policy quotations, we think "the terms are to be taken in their plain, ordinary and popular sense," and that only the beauty shop operations were covered by the terms of the policy. We are not persuaded that the form of address, 829–831, nor the use of the words "or barber shop" in the printed portions of the policy warrant the construction that the barber shop operation should be included in this "Beauty Shop Malpractice Liability Policy."

■ Finally, plaintiff contends that Continental is estopped from asserting any other defense than the one set forth in its letter of September 26, 1961, i. e., that "no premium was paid for the barber shop operation." Plaintiff asserts that Continental's Exhibit 9, a paid invoice covering estimated premium for the year commencing December 18, 1960, rebuts this statement. We do not agree. In this exhibit, under the heading "Description," is written "Beauty Parlor Liability." It contains no reference to the "barber shop operation" or "barber shop," and the exhibit is consistent with Continental's position in the lower court and here.

We therefore conclude that the trial court was correct in determining that the instant insurance policy did not cover the barber shop operations, and that all premiums paid were for beauty shop coverage only.

For the reasons given, plaintiff's motion for judgment, heretofore taken by this court with this case, is denied, and the order of the trial court discharging the garnishee-defendant is affirmed.

Affirmed.

BURMAN and KLUCZYNSKI, JJ., concur.